# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LINDA MARIE HILDEBRAND,**

        **Plaintiff,**

-vs-                                Case No. 6:11-cv-1012-Orl-31DAB

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of Defendant's denial of Plaintiff's applications for social security disability insurance benefits. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **REVERSED and the matter be REMANDED under sentence four of 42 U.S.C. § 405(g)**, for further proceedings.

# Procedural History

Plaintiff filed an application for Disability Insurance Benefits, alleging an onset date of May 3, 2007 (R. 146-51). The application was denied administratively, and Plaintiff sought and received a hearing before an Administrative Law Judge ("the ALJ") (R. 92-94, 102-03, 31-79). The ALJ issued an unfavorable decision on March 31, 2010 (R. 10-24). Plaintiff requested review from the Appeals Council, and submitted additional documents (R. 7). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner (R. 1-6). Plaintiff timely filed for review in this Court (Doc. No. 1), and the matter has been fully briefed by the parties and referred to the undersigned for a report and recommendation.

# Nature of Disability Claim

Plaintiff claims to be disabled due to "Multiple Sclerosis, optic problems, fatigues, arthritis, spinal disc damage," as well as urinary and fecal incontinence, migraine headaches, pain, and balance problems (R. 176).

*Summary of Evidence Before the ALJ*

Plaintiff was 49 years old at the time of the ALJ's decision (R. 146), with some college education (R. 183) and past relevant work experience as a tractor trailer truck driver (R. 22, 185).[1]

Plaintiff's pertinent medical history is set forth in detail in the ALJ's decision and in the interests of privacy and brevity will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of treating providers within the pertinent time period, the record includes the opinions of state agency consultants, the forms and reports completed by Plaintiff with respect to this claim, as well as the testimony of Plaintiff at the hearing and the testimony of a Vocational Expert.

By way of summary, the ALJ found Plaintiff had the impairments of multiple sclerosis and degenerative disc disease (R. 15), and the record supports this uncontested finding. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. 16), and determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in the regulations (R. 16-17). Specifically, the ALJ found that Plaintiff could lift and carry 10 pounds occasionally and 5 pounds frequently; could stand and/or walk for up to 2 hours in an 8-hour workday with the assistance of a cane and that she could sit for 6 hours in an 8-hour workday; could occasionally climb stairs, balance, stoop, kneel, and crouch, but could never climb

---

[1] Plaintiff worked part time after the alleged onset date as a receptionist and sales clerk, however the ALJ determined that this work was an unsuccessful work attempt (R. 15).

ropes, ladders, or scaffolds, and could never crawl (R.16-17). The ALJ found that Plaintiff had limited depth perception and accommodation visually, and determined that Plaintiff was limited to simple, routine, repetitive tasks involving up to three step commands due to the effects of multiple sclerosis (R. 17). With this RFC, the ALJ determined that Plaintiff was unable to perform her past relevant work but, based on testimony from a vocational expert witness ("VE"), the ALJ found that there were a substantial number of jobs in the national economy that Plaintiff could perform, and therefore, she was not disabled (R. 22-23).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.,* 357 F.3d at 1240 n. 8 (internal citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord,*

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff raises several issues on review, contending: 1) the ALJ failed to include all of Plaintiff's limitations in the residual functional capacity assessment; 2) the ALJ's finding that the consultative physician's opinion is "less persuasive" is not supported by substantial evidence; 3) the ALJ failed to make findings concerning the side effects of medications; 4) the Appeals Council did not apply the correct legal standard; and 5) reversal for an award of benefits is the appropriate remedy.

*The Sequential Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the case was decided at the fifth step.

*The formulation of the RFC*

Plaintiff argues that the ALJ failed to include all of Plaintiff's limitations in assessing her RFC, specifically her "symptoms" of urinary and bowel incontinence and the need to take naps during

the day (Brief at p. 7-8). While the parties evaluate this contention in the context of the appropriate hypothetical to present to the VE at step five, the Court finds the objection is more properly addressed at step two of the sequential evaluation.

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.[2] An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability. 20 C.F.R. § § 404.1523 and 416.923.

A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r of Social Security,* 265 F.3d 1214, 1219 (11th Cir. 2001). A mere diagnosis, however, is insufficient to establish that an impairment is severe. *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Id., citing McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

---

[2]Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Rodriguez v. Astrue ,* 2011 WL 486118, 3 (M.D. Fla. 2011) (internal citations omitted).

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). Thus, a "[c]laimant need show only that her impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986).

Here, the medical record shows that Plaintiff suffers from both urinary and bowel incontinence to a notable degree. On December 3, 2008, Plaintiff saw Louis M. Angone, M.D. for difficulty with her bowel function (R. 779-781). Dr. Agnone's impression was "[c]hronic irregular bowel movements most consistent with irritable bowel syndrome" (R. 780), and treatment was prescribed. She continued to treat with Dr. Agnone in subsequent visits (R. 778). On December 4, 2008, Plaintiff saw Dale Traficante, M.D. for urinary incontinence, on referral from her neurologist (R. 781-786). She complained of "progression of urinary symptoms of frequency, urgency, nocturia every hour with severe urge incontinence, and some stress incontinence" (R. 785). Plaintiff reported that her incontinence was associated with many activities, including position changes, sitting and walking (R. 790). The medical records also show urinary tract infections and treatment for same (*see, e.g.,* R. 790, 854), and there is objective medical testing confirming both bowel and bladder impairment (R. 780,792-803). Dr. Traficante noted that her urinary incontinence was possibly mulitfactorial, as a result of her multiple sclerosis and her lumbar and cervical spine disease (R. 786). Plaintiff underwent a course of pelvic floor physiotherapy, medication, and other interventions (R. 786, 789-803), with limited success. She testified at the hearing about her continued difficulty and how her bowel and bladder impairments impact her ability to function (R. 47-48). Despite this evidence, incontinence is not listed as an impairment at step two.

The Plaintiff's burden at step two is light. However, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of*

*Soc. Sec.*, No. 09-12426, 2010 WL 2331416, at *1 (11th Cir. June 11, 2010). Here, consistent with the regulations and applicable law, the ALJ credited Plaintiff with severe impairments at step two and proceeded forward with the sequential evaluation. Thus, if Plaintiff's incontinence should have been included as severe at step two, the omission is only error if the ALJ subsequently failed to fully account for functional limitations arising from it. The Court finds that to be the case here.

As noted, the ALJ developed an RFC that does not include *any* limitation arising from Plaintiff's incontinence. While the ALJ summarized the medical findings with respect to this impairment, and referenced Plaintiff's testimony that she requires unscheduled "extended bathroom breaks, from 15 minutes to an hour" (R. 20), he failed to include any limitation specific to Plaintiff's incontinence, finding: "The claimant testified that she must take frequent restroom breaks; however, she was able to sit through the nearly hour-long hearing without a restroom break." (R. 21). To the extent this analysis is an implicit finding that Plaintiff suffers no limitations from her medically determined impairments of bowel and bladder incontinence, the finding is not supported by substantial evidence.

Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Here, the only reason offered for discounting Plaintiff's testimony is the fact that Plaintiff attended the hearing without a bathroom visit. Attendance at a hearing lasting under an hour, however, is not inconsistent with Plaintiff's testimony that she requires frequent unscheduled restroom breaks. In view of the evidence verifying the impairment (either as separate impairments or as functional limitations arising from her MS) and its functional impact on Plaintiff, the finding that Plaintiff's

incontinence caused no vocational limitations cannot be sustained on this explanation. This Court agrees with Plaintiff that the administrative decision must be reversed and the matter remanded to the Commissioner, with instructions to formulate a RFC that adequately addresses all of Plaintiff's impairments[3] and limitations.[4] Once an adequately supported RFC is formulated, the remaining steps of the sequential evaluation, including the hypothetical presented to the VE at step 5, must be revisited by the ALJ.

Although the first issue is dispositive here, the Court briefly addresses the remaining contentions in the interest of completeness.

*Opinion Evidence*

As set forth in the decision and the briefs, in addition to the treating providers, Plaintiff saw Carlos M. Sanchez, M.D. for a consultative examination at the request of the Social Security Administration (R. 681-688). Dr. Sanchez's physical examination revealed a mild loss of range of motion in Plaintiff's lumbar spine and left ankle, crepitus in both knees, and multiple parasthesias of both her arms and legs (R. 682-83). His final impression was multiple sclerosis, optic neuritis and generalized weakness (R. 683). Dr. Sanchez opined: "It is going to be impossible for the patient to maintain a full-time job in her current state of health which I do not see improving." *Id*. The ALJ found Dr. Sanchez's opinion to be "less persuasive" as his "opinion contrasts with the other evidence of record, including the treatment notes from [Plaintiff's] neurologist, Dr. Zwolinski, and the November 2009 MRI of the brain" (R. 21). The Court agrees with Plaintiff that this analysis is not supported by substantial evidence.

---

[3] Plaintiff also contends that the ALJ did not address her need for daily naps. The Court does not find this to be an independent impairment, but rather a symptom of Plaintiff's MS. The ALJ addressed the medical evidence with respect to MS symptomology in the decision.

[4] To be clear, the Court is not finding that the ALJ *must* credit Plaintiff's assertion of disabling limitations arising out of her incontinence impairment. Rather, the Court finds that the reason given here for discrediting the allegations is not supported by substantial evidence. On remand, the ALJ must either credit the testimony or provide an adequately supported rationale for discounting it.

-8-

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986)). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ discredited the consultant's judgment about the nature and severity of Plaintiff's impairment, claiming the opinion was inconsistent with the treatment notes of the treating neurologist and the 2009 MRI of Plaintiff's brain. As set forth by the ALJ, in July 2007, November 2007, January 2008, and April 2008, Dr. Zwolinski's records indicated that Plaintiff's multiple sclerosis was stable (R. 21, 643, 625, 629). The meaning of "stable," however, must be viewed in context. As noted by the ALJ, the July 2007 examination showed discomfort with range of motion in the cervical spine and lumbar spine (R. 18, 643). In November 2007, Dr. Zwolinski noted numbness, weakness, parasthesias, and marked tenderness and spasm (R. 18, 629). January 2008 visit showed discomfort with range of motion of the left knee and pain over the right ankle (R. 628). Plaintiff was observed to be "limping and has an antalgic gait on the left secondary to knee pain." (R. 627). In April 2008, Plaintiff was "still complaining of increased fatigue. She has a new job work at Jo-Ann Fabrics but at best she can only work about three to four hours a day and is essentially physically exhausted secondary to her MS and muscle pain and symptoms and she cannot work beyond that." (R. 625). Assessment included "Progressive weakness of her extremities secondary to her MS." *Id.* In context, "stable" does not mean non-symptomatic. The symptoms that mark Plaintiff's journey with her

disease appear to ebb and flow (R. 427, 759), but they do not resolve. The weakness, discomfort and parasthesias noted by Dr. Sanchez do not differ from Dr. Zwolinski's findings.[5]

Nor does the Court see an inconsistency with the opinion of Dr. Sanchez and the 2009 brain MRI (R. 21, 864). The MRI showed "[t]here are again several foci of gliosis in the white matter of both cerebral hemispheres," noting that "[m]ost of the previously described gliotic foci in the cerebral white matter are either stable or less intense than they were on the previous study of 6/18/08, including one focus which previously showed enhancement and now does not. There is a solitary new focus of gliosis measuring 5x11mm in the posterior corona radiata of the left cerebral hemisphere, but it does not show any post-contrast enhancement" (R. 864). This MRI, conducted a year and a half after the consultative examination, shows that Plaintiff's disease process persisted, with some gliotic foci stabilizing or lessening in intensity and with a new focus of gliosis appearing. As the nature of her illness is "relapsing and remitting multiple sclerosis," (R. 427, *see also* 759), this is hardly surprising. The ALJ fails to explain why the MRI serves to discount the opinion. Remand for full consideration of the opinion, and all other opinions that meet the *Winschel* definition, is required.

*Plaintiff's Medications and the Appeals Council*

Plaintiff next contends that the ALJ erred in failing to make findings regarding the effect of prescribed medications and side effects of those medications on her ability to work, and the Appeals Council failed to apply the correct standard in reviewing the "new and material evidence" of medication side effects, including pharmacy information sheets with side effects underlined (Brief at 16-19). The Eleventh Circuit has noted:

> Where a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, we have determined the ALJ does not err in failing "to inquire further into possible side

---

[5] Nor does the ultimate conclusion of impairment stated by Dr. Sanchez differ dramatically from the opinion of the treating neurologist. As Dr. Zwolinski noted on October 2, 2007: "She has a hearing today with the Social Security Administration as a preliminary for application of disability. I support this and I do not feel that she can maintain her current occupation of a long distance truck driver with her progressive demyelinating disease." (R. 631).

-10-

> effects." *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir.1985). Further, if there is no evidence before the ALJ that a claimant is taking medication that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects. *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir.1992); *see also Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990) (holding that where the claimant did not complain about the side effects from her prescription medications, other than an isolated mention that they might be responsible for causing her headaches, and where the record did not disclose any concerns from her doctors about side effects, substantial evidence supported the determination that the side effects did not present a significant problem).

*Burgin v. Commissioner of Social Sec.*, 420 Fed.Appx. 901, 904 (11th Cir. 2011) (no error in failing to consider alleged side effects because no evidence claimant was experiencing side effects from his medications).

Here, Plaintiff testified about her side effects and the ALJ did consider Plaintiff's statements about side effects in his determination (R. 20-21). While the ALJ did not make a specific determination as to the impact of these side effects on Plaintiff's ability to work, Plaintiff did not claim to be disabled due to the effects, nor did she indicate to her doctors that such side effects presented a significant problem. Regardless, as remand is required, the ALJ may develop the record further, if warranted, with respect to such side effects, and should consider the issue anew.

As for submitting to the Appeals Council pharmacy information sheets with side effects underlined, the Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007). This argument, advanced by the same counsel, has been rejected by the Court of Appeals. *See Burgin*, 420 Fed. Appx. at 903; *Werner v. Commissioner of Social Security*, 421 Fed.Appx. 935, 938 (11th Cir. 2011) ("Mere lists of potential side effects do not establish that a claimant in fact experienced such side effects."); *Colon ex rel. Colon v. Commissioner of Social Sec.*, 411 Fed.Appx. 236 (11th Cir. 2011) (finding that the Appeals Council committed no

error in refusing to remand to the ALJ in the light of the new evidence of pharmacy information sheets). No error is shown on this point.

*Remand as a remedy*

Plaintiff's final contention is that the errors shown compel reversal for an award of benefits as "the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt" (Brief at 19-20), citing *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir. 1993); *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) (holding that reversal is warranted where the record is fully developed and, upon the application of the correct legal standards, the claimant is entitled to benefits and the "record . . . is fully developed and there is no need to remand for additional evidence").

The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case.

## Conclusion

As the administrative decision was not made in accordance with proper legal standards and is not supported by substantial evidence, it is **respectfully recommended** that it be **REVERSED and the matter REMANDED** under sentence four of 42 U.S.C. § 405(g), with instructions 1) to evaluate all of Plaintiff's impairments, including her incontinence and the effects of her medications, and incorporate the findings in the administrative decision; 2) to consider and explain the weight given

to each of the medical opinions; and 3) to conduct any additional proceedings deemed appropriate. If this report is adopted, the Clerk should be directed to enter judgment accordingly, and close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 4, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy